UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRADLEY M. CATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06-cv-0852-DFH-TAB |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Bradley M. Cates seeks judicial review of a decision by the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. Mr. Cates suffered from painful back problems. The issue for the ALJ was whether the pain was so severe as to render Mr. Cates unable to perform even simple sedentary jobs with a sit/stand option. The ALJ found that Mr. Cates was not so disabled and that he had exaggerated the severity of his symptoms. This court must defer to that finding unless the ALJ made a legal or procedural error or simply failed to consider fairly some important evidence. The ALJ in this case considered the evidence in detail and thoroughly explained her conclusion that Mr. Cates' condition was not as severe as he claimed. The court finds no error and affirms the denial of benefits.

*Background*

Mr. Cates was born in 1968 and has a high school education.  R. 17, 41. He has worked in the past as a construction worker, trailer assembler, and welder.  R. 17.  He alleges that he became disabled on April 2, 2001 after twisting his back while moving a dresser.  *Id.*

In early April 2001, Mr. Cates visited Dr. Romano complaining of lower back pain, inability to straighten his body, and numbness in his right leg.  R. 173. Examination showed decreased range of motion, muscle spasm, and lumbosacral tenderness.  *Id.* An MRI on April 21, 2001 revealed very mild borderline congenital stenosis of the lumbar spine and a mild annular bulge at L4-L5 contributing to the borderline degree of stenosis.  R. 172.

On April 30, 2001, Mr. Cates visited Dr. Johnson.  R. 193.  He displayed good strength and motor function in his extremities, good range of motion in his knees, hips, and ankles, and negative straight leg raising.  *Id.*  Dr. Johnson diagnosed him with chronic low back pain.  *Id.*  The next day, Mr. Cates was hospitalized and had a steroid injection that worsened his pain.  R. 139.  He was discharged on Lorcet.  R. 140.

Dr. Romano referred Mr. Cates to Dr. Sapir.  R. 170.  On May 8, 2001, Mr. Cates told Dr. Sapir that his pain radiated across his back, was exacerbated by prolonged sitting and standing, made it uncomfortable to drive, and kept him

awake. R. 160. Mr. Cates walked in a stooped, bent position, had limited forward flexion, and exhibited discomfort on straight leg raising. *Id.* Dr. Sapir assessed Mr. Cates with discogenically mediated pain secondary to disc tearing and herniation, with some mild radicular irritation on the right with no evidence of radiculopathy or sciatica. R. 161. He prescribed Baclofen, Oxycodone, Klonopin, Vioxx, and epidural steroid injections. *Id.*

On May 30, 2001, Dr. Metzman evaluated Mr. Cates. R. 166. His impression was fairly significant low back pain. *Id.* He prescribed a Medrol dosepak, excused Mr. Cates from work for one week, and referred him for epidural steroid injections. *Id.*

In June 2001, Mr. Cates saw Dr. Sapir for a lumbar discography that showed a normal L3-L4 disc with a possible small grade II tear and no pain. R. 154-55. At the L4-L5 level, Mr. Cates exhibited transaxial concordant pain at a level of 5-6 on a scale of 10. R. 155. There was a grade II or III small posterior annular tear that suggested mild central spinal stenosis and broad based bulging at this level, but there was no degeneration of the disc. R. 155-56. The L5-S1 level showed no abnormality and no pain. R. 155.

On September 20, 2001, Dr. Romano completed disability forms for Mr. Cates. Dr. Romano reported that Mr. Cates could carry out normal activities such as sitting, standing, walking, lifting, and driving with some limitations, but he

noted that these activities were not evaluated.  R. 201.  He found that Mr. Cates could perform housework and care for his personal needs without limitation.  *Id.*

In January 2002, Dr. Romano referred Mr. Cates to Dr. Kochert.  R. 168. She assessed him with low back pain and right lumbar radiculopathy secondary to disc pathology at L4-L5 and prescribed Baclofen and Naprosyn.  R. 184.

On February 1, 2002, Dr. Sadiq examined Mr. Cates for disability.  R. 174. Mr. Cates had an abnormal gait, but his ranges of motion in his hips and knees were normal, and his straight leg raising was negative.  R. 178.  Mr. Cates' muscle strength was a 4 out of 5 in his extremities, and his reflexes were normal.  R. 179.

A year later, Mr. Cates visited Dr. Kochert again.  His diagnosis was L4-L5 degenerative disc disease with disc bulge.  R. 224.  She found that his functional limitations would be "sedentary . . . activity with ability to change positions frequently with avoidance of bending and lifting greater than 10 [pounds], and minimal twisting."  *Id.*  She proceeded with nucleoplasty at L4-L5.  R. 222.  The procedure provided Mr. Cates with 50 percent pain relief.  R. 220.

In May 2003, Mr. Cates complained of radiating pain increased by activity and twisting.  R. 218.  Dr. Kochert prescribed Darvocet and Topamax.  *Id.*  Two weeks later, she also prescribed Methadone and Zanaflex.  R. 216.  In September 2003, Mr. Cates maintained that he was unable to engage in any activities of daily

living, his sleep was poor, and his leg tingled all the time.  R. 226.  He continued his drug regimen with the addition of Ambien.  *Id.*

In December 2003, Mr. Cates underwent a functional capacity evaluation. R. 231.  He could lift 18 pounds from the floor to his shoulders, but he showed decreased tolerance for prolonged standing, sitting, and walking, and decreased strength and range of motion in his extremities.  R. 249.

In March 2004, Dr. Kochert recommended a spinal cord stimulator.  R. 383. The trial stimulator gave Mr. Cates over 50 percent relief and another hour of pain relief after he turned it off.  R. 381.  The permanent stimulator improved Mr. Cates' pain by 25 percent; however, his surgical wound became infected, and the stimulator was removed.  R. 364, 362.

Mr. Cates was evaluated for physical therapy on October 5, 2004.  R. 348. He had decreased spinal range of motion, decreased muscle strength in his lower extremities, and positive straight leg raising on the right.  R. 348.  A week later, Dr. Kochert administered a left femoral cutaneous nerve block.  R. 380.

On February 9, 2005, Dr. Kochert assessed Mr. Cates with low back pain and lumbar radiculopathy and ordered an MRI.  R. 376. The MRI indicated minimal annular bulging without stenosis or nerve root impingement at L3-L4. R. 370.  At L4-L5, there was a broad posterior protrusion with slight flattening in

the anterior dural sac and a borderline degree of canal stenosis.  *Id.*  No abnormal enhancement involving the dural space was identified.  R. 371.  The impression was mild spondylitic changes of the lumbar spine with broad disc protrusion posteriorly at L4-L5 creating mild central stenosis, and very mild congenital narrowing of the lower lumbar spine.  *Id.*

On March 11, 2005, Dr. Crecelius examined Mr. Cates.   R. 368. Examination revealed intact muscle strength, symmetric reflexes, pain from straight leg raising, and an antalgic stooped gait.  *Id.*  Mr. Cates was able to move about independently and to stand on his heels and toes.  *Id.*

Dr. Crecelius found that the MRIs "show dehydration and bulging at L4-[L5, but] no real nerve root compression," and discography suggested concordance at the L4-L5 level.  R. 368-69.  He concluded that Mr. Cates had "chronic pain which may be somewhat discogenic related to his [L4-L5] disc[,] though obviously his degree of pain and incapacity is far greater than the degree of severity of the structural lesion identified."  R. 369.  Dr. Crecelius opined that Mr. Cates might be more comfortable in retirement.  *Id.*

The next month, Mr. Cates underwent another implantation of a spinal cord stimulator.  R. 343.  He responded well to its therapy.  R. 337.

As of September 13, 2005, Mr. Cates' medication included Methodone and Percocet for pain, Zanaflax for muscle spasms, and Glycolax Powder KRE and Docusate Sodium for constipation.  R. 327.

*Procedural History*

On November 20, 2001, Mr. Cates applied for disability insurance benefits and supplemental security income.  The ALJ first concluded that Mr. Cates was not disabled for purposes of the Social Security Act and issued her decision denying benefits to him on August 12, 2004.  On February 10, 2005, the Appeals Council remanded the case back to the ALJ for further consideration.  On September 15, 2005, the ALJ held a second hearing.  At this hearing, Mr. Cates, Mrs. Cates, and vocational expert Bob Hammond testified.

Mr. Cates testified that his back and leg pain had worsened since 2001.  R. 476.  He had problems with incontinence, erectile dysfunction, and constipation.  R. 477-78.  Usually, he set his stimulator at level 7.4 out of 9.9 because he could not tolerate its side effects when he set it higher.  R. 479.  At 7.4, Mr. Cates testified, he was unable to walk.  *Id.*  Mr. Cates testified that he did not do any housework and drove to and from doctors' appointments only when no one else could take him.  R. 483.  He used a cane, handrail, or other support when he walked. R. 485-86.  He needed help dressing himself and could not stoop or bend.  R. 486-87.  Mr. Cates testified that with the stimulator and medication, his pain level was still about 6-7 on a scale of 10 and his medication made him tired all the

time.  R. 491.  He estimated that he could sit in a chair for 45 minutes at a time if he shifted positions.  R. 493.  He could stand for ten to fifteen minutes using his cane or other support, but he could not stand for more than a few minutes without assistance.  R. 495.

Mrs. Cates testified that Mr. Cates was incapable of doing "anything" since he hurt his back in April 2001, and she had to do "everything."  R. 516-17.  She also testified that she had to take care of Mr. Cates' personal needs since April 2001.  R. 517.

Vocational expert Bob Hammond testified that Mr. Cates could not perform his past relevant work.  R. 501.  Based on the ALJ's hypothetical question, he testified that Mr. Cates could perform a significant number of unskilled sedentary jobs, including escort vehicle driver and semi-conductor bander, both existing in significant numbers in Indiana and Illinois.  R. 499-500.  The hypothetical question was then limited to a position who had a sit/stand option and accommodated a person who required something to lean on while standing and the ability to shift his weight.  R. 504.  The vocational expert testified that with those limitations, Mr. Cates could perform the unskilled sedentary job of surveillance system monitor, with 2,500 positions in Indiana and Illinois.  R. 504. This testimony was consistent with the Dictionary of Occupational Titles.  R. 500.

The ALJ again concluded that Mr. Cates was not disabled for purposes of the Social Security Act and issued her decision denying benefits on November 7, 2005.  The Appeals Council denied Mr. Cates' request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).  Mr. Cates now seeks this court's review of the denial.  The court has jurisdiction in the matter under 42 U.S.C. § 405(g).

### The Statutory Framework for Determining Disability

To be eligible for disability insurance benefits, a claimant must establish that he suffers from a disability within the meaning of the Social Security Act.  To prove disability under the Act, Mr. Cates must show that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that had lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d).  Mr. Cates was disabled before the ALJ's decision on November 7, 2005 only if his impairments were of such severity that he was unable to perform work that he had previously done and if, based on his age, education, and work experience, he also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to him.  *Id.*

This standard is a stringent one and is decisive in this case.  The Act does not contemplate degrees of disability or allow for an award based on partial

disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability. The steps are:

(1)   Has the claimant engaged in substantial gainful activity? If so, he was not disabled.

(2)   If not, did the claimant have an impairment or combination of impairments that are severe? If not, he was not disabled.

(3)   If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant was disabled.

(4)   If not, could the claimant do his past relevant work? If so, he was not disabled.

(5)   If not, could the claimant perform other work given his residual functional capacity, age, education, and experience? If so, he was not disabled. If not, he was disabled.

See generally 20 C.F.R. § 404.1520. When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Applying the five-step process, the ALJ found that Mr. Cates satisfied step one because he had not engaged in substantial gainful activity since his alleged

onset date of disability.   R. 17.   At step two, the ALJ found that Mr. Cates suffered severe impairments.   R. 34.   At step three, the ALJ found that Mr. Cates failed to demonstrate that any of his severe impairments met or equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   *Id.*   At step four, the ALJ found that Mr. Cates was not able to perform his past relevant work.   R. 41. At step five, the ALJ found that, despite his severe impairments, he retained the residual functional capacity to "perform unskilled entry-level sedentary work . . . which requires no more than occasional bending, stooping, and twisting[,] no prolonged walking or standing, no climbing, and no work at unprotected heights, and a sit/stand option . . . ."   R. 43.   Although Mr. Cates could not perform the full range of sedentary work, the ALJ concluded that he could perform a significant number of jobs in the national economy.   R. 42.

## Standard of Review

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria."   *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence

that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The court must not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal or remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1238 (7th Cir. 1997), or based his decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  This determination by the court requires that the ALJ's decision adequately discuss the relevant issues:  "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."  *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*,19 F.3d 329, 333-34 (7th Cir. 1994).  Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

*Discussion*

Mr. Cates advances three arguments.  First, he contends that the ALJ's decision is not supported by substantial evidence.  Second, he contends that the ALJ erred in making her credibility findings.  Third, he contends that the ALJ was "playing doctor."

I.    *Substantial Evidence*

Mr. Cates asserts that the ALJ's decision is not supported by substantial evidence.  He disputes the ALJ's finding at step three that his impairment failed to meet or equal any Listing in subsection 1.04 (disorders of the spine).

The ALJ's decision that Mr. Cates did not carry his burden of proof at step three is supported by substantial evidence.  The question for a reviewing court under the "substantial evidence" standard is whether there is substantial evidence that the claimant failed to meet his burden of proof.  "The applicant must satisfy *all* of the criteria in the Listing . . . to receive an award of disability . . . benefits and supplemental security income under step three."  *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (emphasis added).  The evidentiary requirements are exacting at this stage because a finding in the claimant's favor results in an automatic finding of disability without further inquiry.  See generally 20 C.F.R. § 404.1520.

Under the pertinent provisions of Listing 1.04, Mr. Cates was required to prove "spinal stenosis [or] degenerative disc disease resulting in compromise of a nerve root" in one of two ways.   20 C.F.R. pt. 404, subpt. P, App'x 1.   Under Listing 1.04A, he must have produced "evidence of nerve-root compression" and *all* of the following:

 

    (1)     Neuro-anatomic distribution of pain;

    (2)     Limitation of motion of the spine;

    (3)     Motor loss [*e.g.*, atrophy, with associated muscle weakness, or muscle weakness] accompanied by sensory or reflex loss; and

    (4)     Positive straight-leg raising test (sitting and supine).

*Id.*  Listing 1.04C required Mr. Cates to produce evidence of "lumbar spinal stenosis resulting in pseudoclaudication . . . manifested by chronic nonradicular pain and weakness, and resulting inability to ambulate effectively . . . ."  *Id.*

 

Mr. Cates has not explained how either of these Listings was met or equaled.  In his pre-hearing memorandum and in his brief to this court, Mr. Cates failed to identify any evidence in his medical records showing all of the specific components of his burden under either Listing. Even if he had attempted to explain how his medical records met either Listing, Mr. Cates still would not have proven disability at step three.  The ALJ stated:

> Despite various findings during exams by various doctors, the objective testing as stated by Dr. Crecelius . . . demonstrated 'no real nerve root compression' and an assessment of 'chronic pain which may be somewhat

discogenic related to his [L4-L5] disc though obviously his degree of pain and incapacity is far greater than the degree of severity of the structural lesion identified'.

R. 34.  Thus, the ALJ found that the objective medical evidence failed to establish any nerve root compression, an essential element of Listing 1.04A.  See 20 C.F.R. pt. 404, subpt. P, App'x 1.  Because of this objective determination, Listing 1.04A was not met.  Listing 1.04C also was not met because neither pseudoclaudication nor nonradicular pain was identified in Mr. Cates' medical records.

References in Mr. Cates' medical records to "'5-6 [out of] 10 transaxial concordant pain' at the level [L4-L5]" and mild spinal stenosis with a broad based disc bulge do not change the conclusion that Mr. Cates failed to carry his burden at step three.  The mild stenosis did not alone meet or equal an impairment in Listing 1.04.  Mr. Cates' attempt to equate his pain with an impairment in Listing 1.04 fails without an explanation as to why the pain satisfied the Listing's requirements.

Mr. Cates asserts that the ALJ ignored medical evidence favorable to his claim and failed to examine all the evidence in the record.  An ALJ may not select and discuss only the evidence that favors her ultimate conclusion.  *Rice*, 384 F.3d at 371.  She must at least minimally articulate reasons for rejecting or accepting specific evidence of disability so that a reviewing court can trace the path of her reasoning.  *Id.*  Moreover, an ALJ may not ignore an entire line of evidence that is contrary to the ruling.  *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir.

2003).  The ALJ has the discretion – even the obligation – to weigh conflicting medical opinions.  *Caviness v. Apfel*, 4 F. Supp. 2d 813, 824 (S.D. Ind. 1998).

The ALJ based her decision upon a review of the entire record, even those medical findings that tend to support Mr. Cates' claim.  She explicitly referenced findings of positive straight leg raising and decreased spinal range of motion.  R. 33, 34-35.  She also accounted for Mr. Cates' limitations in sitting upright and standing without support in determining Mr. Cates' residual functional capacity by providing for a sit/stand option.  R. 43.  Finally, she limited Mr. Cates to unskilled work after "tak[ing] into account any medication side-effects, hypertension and headaches," R. 36, despite Mr. Cates' failure to identify any objective medical evidence that his medication's side effects would prevent him from working.  The ALJ did not ignore any lines of evidence.

Mr. Cates has not pointed to any objective medical evidence to show he had an impairment that met or equaled one in Listing 1.04.  The ALJ's denial of benefits is based on substantial evidence.

II.     *The Credibility Findings*

Mr. Cates argues that the ALJ failed to comply with Social Security Rule 96-7p when she found not fully credible the testimony of both Mr. and Mrs. Cates.  According to Social Security Rule 96-7p, the ALJ must consider several factors when determining the credibility of a claimant's own testimony about the severity

of his pain.  SSR 96-7p; see also 20 C.F.R. § 404.1529.  This rule and the factors the ALJ must consider are treated in the Seventh Circuit as binding on the Social Security Administration.  *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).  The factors include:  (1) the individual's daily activities; (2)the location, duration, frequency, and intensity of the individual's pain; (3) factors that aggravate the symptoms; (4) the effectiveness and type of medication the claimant takes; (5) treatment other than medication that the individual receives; (6) any other measures the individual uses or has used to relieve pain (*i.e.*, lying flat on his back); (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529.

The ALJ need not mechanically recite findings on each factor, but she must give specific reasons for the weight given to the individual's statements.  SSR 96-7p.  Although the ALJ may not disregard a claimant's subjective complaints merely because they are not fully supported by the objective medical evidence, a lack of objective evidence is nonetheless a factor important to the ALJ's credibility determination.  See 20 C.F.R. § 404.1529(c)(2).

A.    *Mrs. Cates' Testimony*

Mr. Cates contends that the ALJ erred in finding his wife's testimony not fully credible because the ALJ did not specify the reasons for her finding.  This contention is without merit.  The ALJ summarized Mrs. Cates' testimony and explained why it was not fully credible.  R. 38-39.  She found that because Mrs.

Cates testified that Mr. Cates was incapable of doing "anything," her testimony was contradicted by the objective medical evidence and Mr. Cates' own testimony. R. 38.

The ALJ complied with Social Security Rule 96-7p when making her credibility determination about Mrs. Cates' testimony. Social Security Rule 96-7p governs the determination of the credibility of the *claimant's* statements. SSR 96-7p, n.1 (emphasis added). Mr. Cates, not Mrs. Cates, is the claimant. The ALJ will consider Mrs. Cates' statements only to the extent that they are consistent with objective medical evidence. 20 C.F.R. § 404.1529(a). Because much of Mrs. Cates' testimony was not consistent with the objective medical evidence, the ALJ complied with Social Security Rule 96-7p.

B.   *Mr. Cates' Testimony*

The ALJ also did not err in her credibility finding as to Mr. Cates' testimony. She thoroughly discussed the medical evidence in the record and considered Mr. Cates' subjective complaints. The ALJ did not merely issue a conclusory statement. She described the inconsistencies she found between Mr. Cates' testimony and the record. She noted contradictions about incontinence, constipation, pain levels, whether his condition worsened, his independent ability to stand and walk, extremity weakness, the length of time he could sit, the weight he could lift, and his ability to bend. R. 38-40. She concluded: "The objective evidence fails to establish the degree of limitation set forth by the claimant and his

wife." R. 38.  Inconsistencies with other evidence provide a valid basis to discount a claimant's credibility.   The ALJ adequately articulated the reasons for her credibility finding.

III.    *"Playing Doctor"?*

Mr. Cates contends that the ALJ was "playing doctor."  He argues that she misinterpreted objective medical evidence and made her own independent medical findings; that she accepted certain parts of a doctor's findings and ignored others; that she incorrectly attacked his testimony and erred in weighing the medical evidence; and that her decisions have been remanded before, so this decision should be remanded as well.

A.    *Objective Medical Evidence*

Mr. Cates argues that the ALJ was playing doctor by misinterpreting the objective medical evidence and making her own independent medical findings.  He contends that he suffered pain as a result of his injury and the ALJ misinterpreted the findings of that pain.

The ALJ did not "play doctor" by misinterpreting medical evidence or making her own independent medical findings, and the fact that Mr. Cates suffered pain does not mean that the ALJ erred in her decision.  An ALJ must not substitute her own judgment for a physician's opinion without relying on other

medical evidence or authority in the record.  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  But the ALJ was required to evaluate Mr. Cates' subjective complaints of pain in light of the objective medical evidence and other evidence in the record. SSR 96-4p.

The ALJ did not misinterpret Mr. Cates' claims of pain.  She looked to the objective medical evidence, noted the inconsistencies with Mr. Cates' claims, and determined that Mr. Cates' pain was simply not as limiting as he alleged.  R. 38. She explained that Mr. Cates testified at the hearing that his pain was at a level of 6-7 out of 10, but that throughout 2004 and 2005, he had reported his pain was at a level of 3-5 out of 10. R. 39.  Because no evidence showed that his physical condition had worsened, the ALJ concluded, while acknowledging Mr. Cates' pain, that he had exaggerated its severity, and she determined that his testimony was inconsistent with the medical evidence.  *Id.*  She gave credit to Mr. Cates' complaints of pain that were consistent with a significant range of unskilled, sedentary work.  R. 43.

The ALJ also considered other factors relating to Mr. Cates' pain, such as his use of a cane and bent posture, his ability to walk independently and to sit for limited periods of time, and his spinal cord stimulator and its effects.  R. 39-40. Her decision considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence . . . ." R. 36.  She did not substitute her own medical findings or misinterpret objective medical evidence.

B.     *Weighing the Evidence*

Mr. Cates also argues that the ALJ played doctor by erring in her weighing of the medical evidence.  He contends that she accepted certain parts of a doctor's findings while ignoring others.  It is the ALJ's responsibility to weigh all of the applicable evidence to determine the claimant's limitations and abilities.  *Diaz*, 55 F.3d at 308.  She determines how much credence to give particular pieces of evidence. *Id.*  Weighing conflicting evidence is the core of the ALJ's job; it is not "playing doctor."

The ALJ did not ignore medical evidence.  She weighed each part of the evidence and determined how to credit it.  She noted evidence of positive straight leg raising tests at least eleven times.  R. 19-34 (citing R. 152, 160, 184, 214, 216, 346, 348, 368, 374, 376, 379).  She also acknowledged evidence of "dehydration and bulging at [L4-L5] . . . ."  She specifically quoted that medical finding as part of Mr. Cates' objective diagnosis, which was "dehydration and bulging at [L4-L5] with no real nerve root compression."  R. 36.

The ALJ did not ignore objective medical evidence by not mentioning Dr. Crecelius' statement that Mr. Cates might be more comfortable in retirement.  See R. 369.  Dr. Crecelius provided no medical evidence to support this statement and

did not identify any work related limitations resulting from Mr. Cates' condition. This statement does not add to Mr. Cates' claim.

Mr. Cates' contention that the ALJ ignored that the findings by Dr. Romano that he is able to perform daily activities and care for his personal needs were not actually examined, see R. 201, is also unpersuasive.   Dr. Romano's medical records indicate that Mr. Cates could perform "normal activities with some limitations" and normal housework and caring for his personal needs without any limitations. *Id.*  The ALJ did not misinterpret this finding.  She used it as evidence that even if Dr. Romano had overestimated Mr. Cates' abilities, he still would not be incapable of doing "anything," contrary to his wife's testimony.  R. 38.  The ALJ was not playing doctor in weighing this medical finding.  She acted within her responsibility to weigh all of the applicable evidence to determine Mr. Cates' limitations and abilities.

C. *Mr. Cates' Ability to Bend*

Mr. Cates again asserts that the ALJ improperly discredited his testimony and improperly weighed the medical findings about his ability to bend.  The ALJ did not err in discrediting Mr. Cates' testimony.  Also, she did not provide for bending in Mr. Cates' residual functional capacity determination before appropriately weighing the medical evidence and finding that he was capable of occasional bending.  She explained:

> [Mr. Cates] has demonstrated the ability to at least occasionally bend, *i.e.*
> he many times walks in a bent position and he is able to bend to get into a
> car, get in and out of a chair, etc., all activities that demonstrate occasional
> bending; plus medical exams, as discussed above, have demonstrated the
> ability to at least occasionally bend.

R. 40.  The ALJ objectively weighed the merits of conflicting evidence to decide this
case.

>        D.      *Competence and Fairness of the ALJ*

       Mr. Cates also has attacked the ALJ's competence and fairness, referring

to two cases from the Central District of Illinois in which courts reversed denials

of benefits by the same ALJ.  Mr. Cates has not provided citations to or copies of

those decisions.  Given the high volume of Social Security disability litigation, it

would not be surprising that this ALJ's decisions have been reversed before.  The

same is surely true of any ALJ who has been on the job more than a year or two.

The same is certainly true of nearly every United States District Judge who has

been on the job more than a year or two.  The attack on the ALJ adds nothing to

Mr. Cates' claim.

       Mr. Cates' argument that the ALJ was playing doctor is unpersuasive.  She

acted within her responsibility and did not play doctor.

*Conclusion*

For the foregoing reasons, the ALJ's decision denying benefits is supported by substantial evidence and does not reflect a legal error that requires remand. The ALJ's decision is affirmed.  Final judgment will be entered accordingly.


So ordered.

Date: March 12, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Richard J. Doyle
Doyle, Lehman, Patel & McMasters, P.C.
rjdoyle@doylelawteam.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov